# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: POLAROID CORPORATION | BKY No. 08-46617 |
| Debtor. | |

| | |
|---|---|
| PNY TECHNOLOGIES INC., | Civil No. 16-1357 (JRT) |
| Appellant, | |
| v. | **MEMORANDUM OPINION AND ORDER AFFIRMING THE BANRKUTPCY COURT ORDER** |
| POLAROID CORPORATION, | |
| Appellee. | |

David J. Adler, **MCCARTER & ENGLISH LLP**, Four Gateway Center, 100 Mulberry Street, Newark, NJ 07102; and Robert T. Kugler, **STINSON LEONARD STREET LLP**, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402, for appellant.

John R. Stoebner and Ralph V. Mitchell, Jr., **LAPP LIBRA THOMSON STOEBNER & PUSCH, CHARTERED**, 120 South Sixth Street, Suite 2500, Minneapolis, MN 55402, for appellee.

This matter arises out of the bankruptcy proceedings of Debtor Polaroid Corporation ("Polaroid"). Appellant PNY Technologies, Inc. ("PNY") submitted a proof of claim in the amount of $686,837.57 seeking payments related to its prior business relationship with Polaroid. Polaroid's trustee ("Trustee") objected to a portion of PNY's proof of claim in 2011, and the Bankruptcy Court sustained the Trustee's objection in 2013. PNY appealed, arguing that it should have been given an opportunity to conduct discovery, and in 2015, this Court vacated the Bankruptcy Court's 2013 order and remanded for further proceedings. Subsequently, PNY conducted discovery and the

Trustee expanded its objection to cover all but a small portion of PNY's proof of claim. The Bankruptcy Court held a joint trial and evidentiary hearing on the Trustee's objection in October 2015. In May 2016, the Bankruptcy Court sustained the Trustee's objection, allowing only $41,923.57 of PNY's original claim for $686,837.57.

PNY now appeals the order of United States Bankruptcy Judge Gregory F. Kishel dated May 5, 2016, arguing that the Bankruptcy Court (1) should have considered certain internal documents to be "admissions" binding on the Trustee; (2) should have drawn an adverse inference against the Trustee for failure to produce certain documents during discovery; (3) strayed from the mandate of the Court's 2015 decision; and (4) erred in its determination of PNY's claim amount. For the reasons set forth below, the Court affirms the order of the Bankruptcy Court.

## BACKGROUND

## I.   FACTS & PROCEEDINGS BEFORE 2015[1]

On April 6, 2007, PNY and Polaroid executed a Support Services Agreement ("SSA") under which Polaroid would act as an intermediary in the sale of PNY's goods to the retailer Target Corporation ("Target"). (Appellant's Br. ("PNY Br."), Exs. 1-3 ("App.") at 11-20, July 25, 2016, Docket No. 18.)[2] The process contemplated by the SSA is as follows: Target would submit a purchase order for PNY-manufactured goods to

---

[1] See the Court's prior order, *In re Polaroid Corp.*, 527 B.R. 335 (D. Minn. 2015), for a more complete history of the litigation prior to March 2015.

[2] PNY filed a three-volume appendix as attachments 1, 2, and 3 to its brief at Docket Number 18. The appendix is consecutively paginated, and references to the appendix in this Order will be to that pagination.

Polaroid, Polaroid would then submit a purchase order reflecting Target's order to PNY, PNY would ship the products to Target, PNY would invoice Polaroid for the order, Polaroid would then invoice Target for the order, Target would send payment to Polaroid, and Polaroid would pass on the payment to PNY less a 1% service fee as described in the SSA (the "Service Fee"). (*Id.* at 11-12, 34.) Under the SSA, Polaroid was never obligated to pay PNY for its fulfillment of a purchase order unless and until Target first paid Polaroid.[3] (*Id.* at 12.)

Occasionally, Target would deduct various costs associated with the sale of PNY's goods (for example, charge backs, price protections, discounts, and advertising costs) from the overall amount it paid to Polaroid; these costs are referred to for purposes of this Order as "deductions." The SSA further provides that "PNY will be solely responsible for any [deductions, including ]situations, risks, liabilities, and claims relating to charge backs, price protections and discounts, marketing fees, late or incomplete shipments, returns, recalls, consolidation fees and charges, and similar risks relating to or arising from the sale of the Products to [Target]." (*Id.* at 13.)

The parties conducted business under the SSA until June 30, 2008. (*Id.* at 20.) Polaroid filed for bankruptcy on December 18, 2008; on August 31, 2009, the

---

[3] Section 2(d) of the SSA states that "[u]pon receipt of payments from [Target], Polaroid shall remit the same, less the Service Fee, to PNY." (App. at 12.) In practice, this was not always a streamlined process because the identifying number for the Target-to-Polaroid purchase orders and invoices between Target and Polaroid differed from the corresponding Polaroid-to-PNY purchase orders and invoices between Polaroid and PNY. After receiving payment from Target, Polaroid had to go back and find the PNY invoice that related to the recent payment from Target. Occasionally, this process was slow and cumbersome. (*E.g.*, *id.* at 666, 996, 1004, 1023.)

proceedings were converted from Chapter 11 to Chapter 7.  (*Id.* at 124.)  On February 20, 2009, PNY filed a Proof of Claim (referred to as "Claim 34") against Polaroid in the bankruptcy proceeding; PNY sought a total of $686,837.57 from Polaroid composed of $111,713.60 in "Invoices" (the "Invoices Claim") and $575,123.97 in "Deductions" (the "Deductions Claim").[4]  (*Id.* at 21-27.)

On June 21, 2011, the Trustee filed a motion seeking to disallow the Deductions Claim.  (*Id.* at 28-32.)  The Trustee argued that based on the SSA, PNY bore all risk for Target's deductions of various sorts, and therefore, Polaroid could only possibly owe PNY $111,713.60 based on the Invoices Claim.  (*Id.* at 30).  PNY responded that it would be premature for the Court to disallow the Deductions Claim without first giving PNY leave to obtain "narrow" discovery from the Trustee[5] related to "the relationship between Polaroid and Target," "[t]he payments from Target to Polaroid and the invoices sent from Polaroid to Target," including whether Target withheld any portion of payment based on

---

[4] PNY's argument regarding the Invoices Claim is that at the time it filed Claim 34, PNY had a number of open invoices with Polaroid for products PNY had already sent to Target, and Polaroid had sent to PNY either no payment or only partial payment on those invoices and had also not provided documentation showing why there was not full payment.  PNY posits that Target may have remitted payment to Polaroid that corresponds to some or all of these open invoices, and if that were the case, Polaroid would be required to pass on payment to PNY under the SSA.

While the SSA does place the "sole responsibility" for risks related to deductions made by Target from the total it owed to Polaroid (and then paid to PNY less the Service Fee), PNY's argument about the Deductions Claim is that Target may have reversed some or all of the claimed deductions and paid Polaroid, in which case Polaroid would have been required to remit those funds minus the Service Fee to PNY.  (*See* App. at 180, 217-35.)

[5] On June 3, 2011, in separate adversary proceedings regarding a claim by Polaroid's Trustee against PNY for breach of contract, PNY served discovery requests on the Trustee.  (App. at 205, 217-35, 316-19.)  The Trustee never responded to the requests, maintaining that PNY was not entitled to discovery in the adversary proceeding.  (*Id.* at 319.)

a "deduction" and also whether any payments from Target were based on Target's reversal of previous deductions or chargebacks. (*Id.* at 180-81, 194-95.) On December 30, 2013, the Bankruptcy Court denied PNY's request for discovery and disallowed the Deductions Claim as a matter of law based on its interpretation of the SSA (the Bankruptcy Court's decision is referred to as the "2013 Claims Order"). (*Id.* at 133-55.) The Bankruptcy Court, however, allowed the Invoices Claim because "the Trustee had not met his burden[,] as objector, to rebut the prima facie validity assigned to that component of the claim under Fed. R. Bankr. P. 3001(f)." (*Id.* at 923.)

In February 2014, the Bankruptcy Court denied PNY's motion to reconsider the 2013 Claims Order, and PNY subsequently appealed the 2013 Claims Order and the denial of the motion to reconsider to the District Court. (*Id.* at 343-44, 339-40.)

## II.    PNY'S FIRST APPEAL

On appeal, the Court vacated the 2013 Claims Order. *PNY Techs., Inc. v. Polaroid Corp.* (*In re Polaroid Corp.*), 527 B.R. 335 (D. Minn. 2015). In *In re Polaroid Corp.* (also referred to as the "Remand Order"), the Court reasoned that the Bankruptcy Court had abused its discretion in not permitting discovery before the entry of judgment under Rule 56(d) of the Federal Rules of Civil Procedure.[6] *Id.* at 347-48. The Court explained:

> [The Court] will remand to allow PNY to conduct discovery with respect to its entitlement to the $575,123.97 sought in its proof of claim. The Court notes, however, that such discovery will be limited to the document

---

[6] Rule 56(d) sets out the procedure by which a nonmovant may request additional time for discovery if "it cannot present facts essential to justify its opposition" at the time that a summary judgment motion is pending. Fed. R. Civ. P. 56(d).

production requests that PNY has cited in its brief before this Court,[7] as these are the materials that PNY indicated would be probative on its proof of claim.

*Id.* at 350-51 (footnotes omitted).  As for the Invoices Claim, the Court explained:

PNY has not, . . . provided a basis for allowing additional discovery with respect to the $111,713.69 sought in invoices, and therefore may not conduct discovery to ascertain if any additional invoices would entitle PNY to more than the $111,713.69 relief it claims.

*Id.* at 351 n.8.  The Court remanded the matter to the Bankruptcy Court for "further proceedings consistent with this Order."  *Id.* at 351.

## III.    PROCEEDINGS ON REMAND

After remand, at a status conference on May 26, 2015, the Trustee's counsel announced, for the first time, his position that the Invoices Claim should be disallowed, stating that Polaroid's "obligation to [pay the invoices PNY sent to Polaroid] arose only if and when [Polaroid] received payments from Target, so [Polaroid] had no liability for invoices at all."  (App. at 534.)  The Trustee's counsel did not formally object to the Invoices Claim at that time, but stated that the Trustee was "looking into whether he wants to amend his objection since the whole order came back and was reversed and remanded, including the allowance of [the Invoices Claim]."[8]  (*Id.*)

Subsequently, the Bankruptcy Court directed PNY to serve discovery requests "within the subject-matter limits imposed by the district court on remand," cautioning

---

[7] In its appeal brief, PNY quoted three enumerated requests originally from the document request PNY served on Polaroid in June 2011.  (App. at 412-13.)

[8] Apparently the Trustee raised this issue to "tee[ it] up" in advance of settlement discussions.  (App. at 534.)

that the requests must be "directed toward the specific factual question of whether Target Corporation ever rectified the account chargebacks in dispute by making payment to the Debtors that the Debtors then did not pay over to PNY."  (App. at 555-56 (citing *In re Polaroid Corp.* at 351 & n.8).)

On June 9, 2015, PNY served Polaroid with a formal request for documents which included a modified, rather than verbatim, version of its 2011 discovery request.[9]  A dispute ensued over whether PNY's discovery requests were proper, and PNY filed a motion to compel.[10]  (*Id.* at 558-98).  On August 24, 2015, PNY withdrew its motion to compel, stating that "on August 19-20, 2015 Plaintiff, through its counsel, provided PNY with answers to the relief requested in the Motion."  (*Id.* at 603.)

---

[9] (*Compare* App. at 412-13 (PNY's briefing before the Court during the first appeal, quoting a portion of PNY's 2011 discovery request in the adversary proceeding) *with id.* at 560-61 (PNY's 2015 document requests).)

[10] In briefing regarding the motion to compel, PNY argued that the Trustee had not provided, as requested, any of the "purchase orders and invoices generated by Polaroid to Target," (App. at 561), or a "listing of all payments from Target to Polaroid," (*id.* at 591).  The Trustee objected, arguing that the document requests went beyond the scope of discovery authorized by the Court in the Remand Order.  The Trustee also asserted that it had already provided all responsive documents based on its interpretation of the Remand Order.  (*Id.* at 561, 582-86, 588-89.)

PNY countered that even under the Trustee's narrow reading of the Remand Order, PNY was still entitled to discover the purchase orders, invoices, and a list of payments from Target to Polaroid.  (*Id.* at 594.)  Polaroid responded that even if the request for invoices did not exceed what the Court permitted in the Remand Order, and even if invoices were otherwise discoverable under the order, there are no paper invoices from Polaroid to Target.  (*Id.* at 600.)  Instead, according to Polaroid, "all invoicing was done electronically through Target's proprietary vendor ordering and billing software," and the Trustee has no access to that system.  (*Id.*)  Lastly, Polaroid asserted that it had "requested that James Dolan, an estate employee with access to the computer records, attempt to extract from the records of [Polaroid], an accounting of payments received from Target for PNY product and payments remitted to PNY after deducting the commission payable under the [SSA].  A report of the reconciliation attempt [(referred to throughout as the "Dolan Reconciliation")] has been provided to PNY."  (*Id.* at 601.)

The Bankruptcy Court held a joint evidentiary hearing and trial on October 28 and 29, 2015. The parties submitted exhibit lists in advance of the hearing, and they jointly stipulated to the admission of certain exhibits.[11] In the Trustee's pre-hearing brief filed September 11, 2015, the Trustee formally objected to the Invoices Claim for the first time, echoing the arguments the Trustee made in the status conference on May 26, 2015. (*Id.* at 644.) PNY's pre-hearing brief, filed on October 3, 2015, did not directly address the Trustee's new objection to the Invoices Claim, nor did it request additional discovery, though it did state that "it is troubling that many responsive documents were not produced" and "[a]s a result of this, these issues will need to be explored with the witnesses at the evidentiary hearing." (*Id.* at 652.)

At the evidentiary hearing, PNY relied on Polaroid's internal reports summarizing all SSA-related transactions with Target and PNY on a monthly basis (the "Monthly Reconciliations"). The reports, which the Trustee provided to PNY in February 2015, showed that overall, Target paid $5,511,844 to Polaroid in connection with the SSA and that Polaroid remitted $5,079,316 to PNY over the life of the SSA. (*See, e.g.*, *id.* at 990.) A PNY employee testified that she could not verify the accuracy of the $5,511,844 figure because the exhibit "[was not her] document," and it came from Polaroid. (*Id.* at 681.) The Monthly Reconciliations did not provide an accounting of each and every transaction that took place each month; rather, they were contemporaneously-created summaries

---

[11] (*See* App. at 608-17 (both parties' exhibit lists, filed September 11, 2015); *id.* at 636-38 (joint stipulation as to admissibility of certain exhibits, filed October 2, 2015).)

created monthly, and the data on them was pulled from Polaroid's more-detailed ledger books.

The Trustee's witness, James Dolan, testified that the Monthly Reconciliations showing Target had paid Polaroid $5,511,844 were not accurate.[12]  (*See generally id.* at 931-32.)  According to Dolan, in the course of responding to PNY's discovery request, he discovered that the underlying source documents (the ledger books) were correct, but that when Polaroid personnel created the Monthly Reconciliation for March 2008, they had pulled data from the wrong part of the ledger books, thus resulting in an inflated sum on the Monthly Reconciliations.  (*Id.* at 695-98, 701-04, 766-67, 777, 780-81.)  Dolan testified that based on his review of the ledger books, to his knowledge Target had actually only paid Polaroid $5,172,970, rather than $5,511,844.  (*Id.* at 704.)  Dolan also testified that the error was discovered "about two weeks after [he] prepared the reconciliation schedule."  (*Id.* at 781.)

Based on the evidence produced at the evidentiary hearing as well as the parties' post-hearing briefing, on May 5, 2016, the Bankruptcy Court issued an order (the "2016 Claims Order") sustaining the Trustee's objection to PNY's proof of claim to the extent of all but $41,923.57 (the difference between $5,172,970 and $5,079,316, less the Service Fee).  (*Id.* at 920-41.)  On May 19, 2016, PNY filed a Notice of Appeal regarding the 2016 Claims Order.  (*Id.* at 942-45.)  PNY now appeals pursuant to 28 U.S.C. § 158(a).

---

[12]  The parties do not disagree that over the life of the SSA, Polaroid paid PNY $5,079,316.

## ANALYSIS

### I.    STANDARD OF REVIEW

In bankruptcy proceedings the District Court sits as an appellate court and reviews the Bankruptcy Court's conclusions of law *de novo* and its findings of fact for clear error. *Reynolds v. Pa. Higher Educ. Assistance Agency*, 425 F.3d 526, 531 (8th Cir. 2005). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see DeBold v. Case*, 452 F.3d 756, 761 (8th Cir. 2006). A trial court's decisions regarding discovery sanctions are subject to abuse-of-discretion review. *Smith v. AS Am., Inc.*, 829 F.3d 616, 624 (8th Cir. 2016); *Sentis Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888, 898 (8th Cir. 2009). "To the extent a discovery sanction depends upon an interpretation of law, our review of the underlying legal determination is de novo." *Sentis Grp.*, 559 F.3d at 899 (citing *United States v. Gonzalez-Lopez*, 403 F.3d 558, 564 (8th Cir. 2005)). To the extent a discovery sanction depends on a ruling under Fed. R. Civ. P. 26(e), the 26(e) ruling is reviewed "for gross abuse of discretion and [should be] reverse[d] only if it resulted in fundamental unfairness." *United States v. STABL, Inc.*, 800 F.3d 476, 487 (8th Cir. 2015).

An appellate court's prior opinion binds the trial court on remand regarding "all matters within the compass of [the] prior opinion." *Houghton v. McDonnell Douglas Corp.*, 627 F.2d 858, 865 (8th Cir. 1980). "[O]n remand the trial court is free to pass upon any issue which was not expressly or impliedly disposed of on appeal." *Thornton v.*

*Carter*, 109 F.2d 316, 320 (8ᵗʰ Cir. 1940).   However, later decisions must "not [be] inconsistent with either the spirit or express terms of [the appellate court's] decision." *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979); *Houghton*, 627 F.2d at 865.   A reviewing court "may construe its own [prior] mandate," which "is 'to be interpreted reasonably and not in a manner to do injustice.'"  *Bailey v. Henslee*, 309 F.2d 840, 843-44 (8ᵗʰ Cir. 1962) (quoting *Wilkinson v. Mass. Bonding & Ins. Co.*, 16 F.2d 66, 67 (5ᵗʰ Cir. 1926)).   "The question of whether the bankruptcy court exceeded [a reviewing court's prior] mandate is a question of law and is thus subject to *de novo* review."  *In re Tri-State Fin., LLC*, 519 B.R. 759, 765 (B.A.P. 8ᵗʰ Cir. 2014).

Rule 8014(a) of the Federal Rules of Bankruptcy Procedure – like Rule 28(a) of the Federal Rules of Appellate Procedure – requires an appellant's brief to include "a statement of the issues presented" and an "argument, which must contain the appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."  Fed. R. Bankr. P. 8014(a)(5), (a)(8); *see* Fed. R. App. P. 28(a)(5), (a)(8).   "To be reviewable, an issue must be presented in the brief with some specificity.  Failure to do so can result in waiver."  *Meyers v. Starke*, 420 F.3d 738, 743 (8ᵗʰ Cir. 2005) (interpreting Fed. R. App. P. 28(a)(5)).

## II.   BURDENS IN CLAIM OBJECTION PROCEEDINGS

First, the Court provides a brief discussion of the Bankruptcy Court's application of the burden-shifting framework set out in the Federal Rules of Bankruptcy Procedure.

A properly filed proof of claim constitutes prima facie evidence of the validity and amount of the claim.  Fed. R. Bankr. P. 3001(f); *Dove-Nation v. eCast Settlement Corp.* (*In re Dove-Nation*), 318 B.R. 147, 152 (B.A.P.

8th Cir. 2004).  If a proof of claim is not objected to, it "is deemed allowed."
11 U.S.C. § 502(a).  To rebut the "presumptive validity" of a claim an
objector bears the burden of producing "substantial evidence."  *Brown v.
IRS* (*In re Brown*), 82 F.3d 801, 805 (8th Cir. 1996) (internal quotation
marks omitted), *abrogated on other grounds by Raleigh v. Ill. Dep't of
Revenue*, 530 U.S. 15 (2000).

*In re Polaroid Corp.*, 527 B.R. at 345-46.  "Substantial evidence" is "evidence sufficient

to rebut" the prima facie case as set out in the proof of claim.  *In re Brown*, 82 F.3d at

805.  If the objector produces such evidence "the ultimate burden of persuasion" shifts

back to the claimant "to establish its entitlement to the claims." *In re Dove-Nation*, 318

B.R. at 152; *see also In re SendMyGift.com, Inc.*, 280 B.R. 667, 674 (Bankr. D. Minn.

2002).

On the other hand, if the proof of claim does not conform with the bankruptcy

rules and thus is "not entitled to prima facie validity, [it is] some evidence of the

Claimant's claims." *In re Dove-Nation*, 318 B.R. at 152 (citing *In re Cluff*, 313 B.R. 323,

340 (Bankr. D. Utah 2004)).   "To overcome a proof of claim [that is not entitled to a

presumption of validity,] the Debtor[] must come forward with 'some evidence' to 'meet,

overcome, or at least equalize' the statements on the proof of the claim." *In re Cluff*, 313

B.R. at 340 & n.62 (quoting *In re All-Am. Auxiliary Ass'n*, 95 B.R. 540, 545 (Bankr. S.D.

Ohio 1989)).

Here, the Trustee objected to the entirety of PNY's proof of claim, and the

Bankruptcy Court placed the ultimate burden of persuasion on PNY.  (App. at 924-25 &

n.5.)  The Bankruptcy Court concluded that Claim 34 was "uncertain" and "murky,"

lacking "allegations of those historical specifics on [its] face" that might show "that

Target did pay [Polaroid] in whole or in part, on account of the itemized chargebacks."

(*Id.* at 925 n.5)  The Bankruptcy Court properly held that the proof of claim "was not prima facie evidence of a matured pre-petition right to payment from [Polaroid] on the transactions cryptically itemized on its face," and therefore, the Trustee's objection, though lacking in "substantial evidence," was sufficient to shift the ultimate burden of persuasion to PNY.  (*Id.*)[13]

## III.   ISSUES ON APPEAL

PNY's enumerates five issues for appeal; the Court discusses each below.[14]

### A.   FAILURE TO DRAW AN ADVERSE INFERENCE AGAINST THE TRUSTEE (ISSUE 5)

PNY asks the Court to resolve "[w]hether the Bankruptcy Court erred in issuing the 2016 Claims Order when it failed to draw an adverse inference against the Trustee as a result of the failure of . . . the Trustee to produce relevant and responsive documents in

---

[13] At various points in its briefing to the Court, PNY suggests that the Bankruptcy Court failed to hold the Trustee to his burden of proof.  The Court finds that even if Claim 34 was facially sufficient to entitle PNY to a presumption of the claim's validity, the Trustee nevertheless produced sufficient evidence, as discussed in more detail below, to fully rebut the contents of Claim 34.  Therefore, it was proper for "the ultimate risk of nonpersuasion as to the allowability of the claim [to] reside[] with [PNY, as] the party asserting the claim."  *In re Brown*, 82 F.3d at 805 (quoting *Junior Dev. Grp. v. Kahn* (*In re Hemingway Transp., Inc.*), 993 F.2d 915, 925 (1st Cir. 1993)).

[14] In Issue 3, PNY urges the Court to consider "[w]hether the Bankruptcy Court erred in the 2016 Claims Order when it concluded that the Monthly Reconciliations were not admissions of Polaroid that were binding on the Trustee?"  (PNY Br. at 6.)  Because PNY did not "argue [Issue 3] with any specificity whatsoever" in its briefing, PNY "has waived this claim" and the Court will not consider it.  *Sweet v. Delo*, 125 F.3d 1144, 1159 (8th Cir. 1997); *see also Meyers*, 420 F.3d at 743.

his possession?" (PNY Br. at 7.)[15] PNY argues that the Trustee possesses "records," also described as "the underlying documents between Target and Polaroid," which "would permit PNY to verify whether it has received all of the payments and/or credits for which it is entitled." (Reply Br. of PNY ("PNY Reply Br.") at 12, Sept. 8, 2016, Docket No. 21.) PNY argues that because the Trustee never produced these "records" in discovery, the Bankruptcy Court should have drawn an adverse inference against the Trustee pursuant to Fed. R. Civ. P. 37(b) or the Bankruptcy Court's inherent authority. PNY also asserts for the first time on appeal that the Bankruptcy Court erred in failing to draw an adverse inference based on the Trustee's failure to supplement discovery pursuant to Fed. R. Civ. P. 37(c).

Rule 37 of the Federal Rules of Civil Procedure governs sanctions against a party for failure to cooperate in discovery in contested bankruptcy matters.[16] Rule 37(a) provides that a party "may move for an order compelling disclosure or discovery" if another party "fails to produce [requested] documents," including providing a response that is "evasive or incomplete." Fed. R. Civ. P. 37(a)(1), (3), (4). A court may impose

---

[15] Also in Issue 5, PNY asserts that it was error for the Bankruptcy Court to fail to draw an adverse inference against the Trustee because Polaroid failed to "maintain records under the SSA." PNY does not explain what it means by the allegation that Polaroid failed to "maintain records under the SSA." Therefore, the Court construes sub-part (i) of Issue 5 as waived. *Meyers*, 420 F.3d at 743; *Sweet*, 125 F.3d at 1159. Absent waiver, this argument would still fail because there is no question that Polaroid did maintain records of business conducted under the SSA. (*See generally* App. at 691-718, 746-83.)

[16] *See* Fed. R. Bankr. P. 3007, advisory committee's note to 1983 rules ("The contested matter initiated by an objection to a claim is governed by rule 9014, unless a counterclaim by the trustee is joined with the objection to the claim."). Fed. R. Bankr. P. 9014(c) directs that Fed. R. Bankr. P. 7037 applies to contested bankruptcy matters, and Fed. R. Bankr. P. 7037 in turn directs that Bankruptcy Courts apply Fed. R. Civ. P. 37 in such proceedings.

sanctions, including "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action," if a party fails to comply with a court order compelling discovery.  Fed. R. Civ. P. 37(b)(2).

Courts also possess inherent authority to impose discovery sanctions, which may be imposed "[e]ven in the absence of a discovery order," *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002); this authority "is a broad and powerful tool" that "should be used sparingly," *Sentis Grp.*, 559 F.3d at 900.  "[C]ourts first should turn to specific rules tailored for the situation at hand, such as Rule 37, to justify sanctions.  Then, as an alternative basis for support or in circumstances where specific rules are insufficient, *i.e.*, where 'there [is] a need,' it may be appropriate to invoke their inherent authority."  *Id.* (quoting *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers* , 357 U.S. 197, 207 (1958)).

In addition, Rule 37(c) provides that "[i]f a party fails to provide information . . . as required by [Rule 26(e)[17]], the party is not allowed to use that information . . . on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  The Court may also impose a number of other sanctions for failure to comply

---

[17] Rule 26 obligates a party who has responded to a discovery request to supplement or correct its response:

> (A)   in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

> (B)   as ordered by the court.

Fed. R. Civ. P. 26(e)(1).  Like Rule 37, Rule 26 applies to contested bankruptcy matters.  *See* Fed. R. Bankr. P. 7026, 9014.

with the Rule 26(e) duty to supplement or correct a discovery response "on motion and after giving an opportunity to be heard." Fed. R. Civ. P. 37(c)(1).

First, the Court addresses whether it was an abuse of discretion for the Bankruptcy Court to decline to impose discovery sanctions under Rule 37(b). PNY filed a motion under Rule 37(a) to compel a response to its request for documents on July 17, 2015. (App. at 558-98.) However, after receiving the Trustee's discovery response, PNY withdrew its motion to compel on August 24, 2015. (*Id.* at 603-04.) As a result, PNY never presented to the Bankruptcy Court the question of whether the Trustee's discovery response was incomplete, nor did PNY present the underlying task of interpreting the scope of permissible discovery. Because Rule 37(b) "has no application if there has not been a court order" compelling discovery under Rule 37(a), *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989, 994 (8th Cir. 1975), the Bankruptcy Court did not abuse its discretion by declining to draw an adverse inference against the Trustee as permitted by Rule 37(b).

Second, the Court addresses whether it was an abuse of discretion for the Bankruptcy Court to refuse to impose discovery sanctions as a matter of its inherent authority based on an allegedly incomplete response from the Trustee. The Court places great weight on the fact that in a status conference on May 26, 2015, the Bankruptcy Court explicitly contemplated a process to determine the proper scope of discovery on remand, given PNY's and the Trustee's intense disagreement on the topic. (App. at 538-41.) The Bankruptcy Court anticipated a heated discovery dispute, yet PNY later withdrew its motion to compel because the Trustee "provided PNY with answers to the

relief requested in the Motion." (*Id.* at 603.)  Under these circumstances, in which the Bankruptcy Court clearly endeavored to manage the course of the litigation and PNY then withdrew its motion to compel, it made sense for the Bankruptcy Court to reject PNY's later arguments about incomplete discovery.  Furthermore, there is no indication that the "specific rules tailored for the situation at hand, such as Rule 37" are "insufficient" to provide PNY with full discovery.  *Sentis Grp.*, 559, F.3d at 900. Therefore, it was not an abuse of discretion for the Bankruptcy Court to decline to impose discovery sanctions against the Trustee as an exercise of inherent authority.

Lastly, the Court turns to whether the Bankruptcy Court erred by failing to impose discovery sanctions under Rule 37(c).  PNY asserts that "the Trustee failed to supplement its document responses to Request No. 4" as required by Fed. R. Civ. P. 26(e) following the Trustee's belated objection to the Invoices Claim.  (PNY Reply Br. at 13.)  PNY's briefing on this issue is very sparse and lacks clarity, but the Court construes PNY's assertion[18] to be that when the Trustee discovered an error in the Monthly

---

[18] An alternative argument PNY could be asserting is that the Trustee always had an underlying responsibility to produce Polaroid's financial ledgers showing the individual inflows and outflows of cash that the monthly reports and, later, the reconciliation, summarized (*see* App. at 780), because those financial ledgers are responsive to Request No. 4.  Such an argument must fail, because if PNY took this view of what documents were covered by Request No. 4, then it should never have abandoned its motion to compel.  At the time PNY withdrew the motion to compel, it had received the Dolan Reconciliation as well as voluminous records from the Trustee that did not include the financial ledgers, yet PNY stated at that time that the Trustee "provided PNY with answers to the relief requested in the Motion." (*Id.* at 603.)  PNY may not now re-characterize its failure to pursue complete discovery responses under the process set out in Rule 37 as a failure by the Trustee to supplement discovery.  Furthermore, it is not clear to the Court that if PNY had pursued a motion to compel asking for the underlying ledgers used in compiling the Dolan Reconciliation, the Bankruptcy Court would have necessarily agreed that those ledgers fall under the language of Request No. 4.  The lack of clarity about what documents were responsive to Request No. 4, given the request's ambiguous language, is an

(Footnote continued on next page.)

Reconciliations, "about two weeks after" the preparation of the Dolan Reconciliation,[19] (App. at 781), perhaps the Trustee failed to timely supplement its discovery response by notifying PNY of the error. *See* Fed. R. Civ. P. 26(e).[20]

However, PNY never asked the Bankruptcy Court to draw an adverse inference against the Trustee based on a failure to supplement discovery responses under Rule 26(e).[21] (App. at 887.) As a general rule, appellate courts "do not consider issues not presented to the [trial] court." *Universal Title Ins. Co. v. United States*, 942 F.2d 1311, 1315 (8th Cir. 1991).

Even if PNY's more generalized request for an adverse inference based on incomplete discovery in Bankruptcy Court were enough to preserve the issue of discovery sanctions under Rule 37(c), PNY's argument would still fail.[22] PNY has not

---

(Footnote continued.)

additional basis why the Bankruptcy Court did not abuse its discretion in declining to sanction the Trustee for failing to supplement discovery.

[19] The Court assumes PNY received the Dolan Reconciliation in late August 2015. (*See* App. at 603.)

[20] In Request No. 4 of its request for documents, PNY sought: "Any and all documents relating to any internal communications, correspondence, and/or analysis within Polaroid regarding (i) invoices or purchase orders generated by Polaroid for products purchased by Target; (ii) payments, credits, disputes or holdbacks from Target; and (iii) reconciliations of amounts owed by Target." (App. at 579-80.)

[21] The single case PNY cited to support its request for an adverse inference from the Bankruptcy Court refers only to discovery sanctions imposed under Rule 37(b) and the courts' inherent authority. *See Residential Funding Corp.*, 306 F.3d at 106-07.

[22] PNY maintains that the Trustee's belated objection to the Invoices Claim somehow expanded the universe of documents responsive to PNY's document request. (PNY Reply Br. at 3.) PNY does not explain why this would be the case; the Court rejects this argument.

demonstrated that any untimely correction of the Trustee's supposed error was not harmless.  Fed. R. Civ. P. 37(c); s*ee STABL, Inc.*, 800 F.3d at 487.  Based on the record and the briefs, the Court does not know when PNY first learned that the Monthly Reconciliations the Trustee provided in February 2015 contained an error, but the Court suspects that PNY became aware of this by October 2, 2015 at the latest.[23]  PNY does not explain what it would have done differently had it actually received word of the error in early September, immediately after the error was discovered, as opposed to receiving it in early October.

For all of these reasons, the Bankruptcy Court did not abuse its discretion in declining to impose discovery sanctions under Rule 37(c).

## B.      THE COURT'S MANDATE ON REMAND (ISSUE 1)

The parties next dispute whether the Bankruptcy Court misinterpreted the scope of the Court's mandate in the Remand Order.  PNY's position can be broken into two key arguments: (1) the Bankruptcy Court misconstrued the scope of the Remand Order by erroneously failing to consider certain theories and pieces of evidence PNY produced at trial, and (2) the Bankruptcy Court violated the mandate rule by either refusing to entertain the Trustee's belated objection to the Invoices Claim, or alternatively, by not

---

[23] This assumption is based on the fact that both parties included on their proposed exhibit lists, in advance of the evidentiary hearing, documents that purported to be the Dolan Reconciliation. (*See* App. at 609, 612.)  Perhaps the two versions were different, with PNY's version including the error and the Trustee's updated version correcting the error.  The parties did not stipulate to the admission of the Dolan Reconciliation along with other stipulations for admissions of evidence, on October 2, 2015, (*Id.* at 636-38), suggesting that by this date, PNY was aware that the Trustee would argue that the original Dolan Reconciliation contained an error.

providing PNY with an additional discovery opportunity after the Trustee voiced the new objection.

### 1.   Whether the Bankruptcy Court Misinterpreted the Scope of the Court's Mandate on Remand Regarding Permissible Theories of Fact or Law

PNY argues that the Bankruptcy Court erred in interpreting the Remand Order as "expressly prohibit[ing PNY] from advancing new theories in fact or law for the allowance of its claim, beyond an unreported receipt by [Polaroid] of then-unremitted funds from Target in reversal of prior chargebacks, up to the amounts itemized in PNY's proof of claim."  (App. at 935.)  PNY argues that because of this erroneous interpretation of the Remand Order, the Bankruptcy Court refused to consider PNY's "new theory," which PNY refers to as the "Section 2(d) Claim" – a claim that PNY is entitled to the total sum Target paid to Polaroid on account of business under the SSA, net the Service Fee and the amount Polaroid actually passed on to PNY.  PNY further argues that the Bankruptcy Court refused to consider PNY's evidence substantiating the Deductions Claim beyond a very narrow type of "direct evidence" that the Bankruptcy Court believed was the only evidence permitted to prove the claim under the Remand Order.

There are statements of dicta in the 2016 Claims Order indicating that the Bankruptcy Court did take a somewhat narrow view of the types of arguments PNY might make[24] on remand and the type of evidence PNY might be permitted to adduce.[25]

---

[24]  (*See, e.g.*, App. at 929-30 (explaining that PNY's attempt to submit evidence of net inflows and outflows of cash (from Target to Polaroid and from Polaroid to PNY) as a type of circumstantial evidence that there were certain deductions that Target had in fact reversed was a

(Footnote continued on next page.)

However, as to the limits on PNY's potential arguments, the Remand Order supports the Bankruptcy Court's conclusion that PNY's claim on remand was limited to what it sought in its proof of claim. Thus, merely showing a difference between the total money passing from Target to Polaroid and the total money passing from Polaroid to PNY, without some link to Claim 34, was not necessarily sufficient to prove any precise portion of the proof of claim. Because the Bankruptcy Court ultimately rejected PNY's "Section 2(d)" claim based on a theory that it did not relate to a pre-petition entitlement **under Claim 34**, the Court finds no fault with the Bankruptcy Court's reasoning. (*See* App. at 924 n.4.)

As to the Bankruptcy Court's treatment of evidence, reading the 2016 Claims Order as a whole, the Bankruptcy Court considered all of the evidence PNY submitted. PNY argues that the Bankruptcy Court allowed the Trustee to adduce testimony about the net flows of cash from Target to Polaroid and from Polaroid to PNY, yet refused to

_____

(Footnote continued.)

"theory" that was a "surprise" when it first came out at the evidentiary hearing, and that the theory "did not match the directive at all"); *id.* at 924 n.4.)

[25] (*See, e.g.*, App. at 924 ("The point of fact to be addressed on remand was whether Target had ever reviewed or rectified any of those specific chargebacks, by making a compensating payment or payments to [Polaroid] that [Polaroid] then failed to remit to PNY net of its service charge."); *id.* at 927 (explaining that "comparative accounting among records from PNY, Target, and [Polaroid]" was "the direct evidence that the district court contemplated"); *id.* (stating that the district court identified two "predicate facts" that PNY needed to prove on remand in relation to the Reversed Deductions claim: "[(1)] reversals of chargebacks by Target and compensating payment to [Polaroid, and (2) Polaroid's] remittance or non-remittance to PNY correspondingly and in like amount"); *see also id.* at 928-30 (rejecting the sufficiency of PNY's evidence to prove any portion of the Deductions Claim because while PNY produced some direct evidence of the first predicate fact – payment by Target to Polaroid – in the amount of $157,780.30, PNY produced no direct evidence of the second predicate fact – that Polaroid did not remit payment of the $157,780.30 to PNY as the SSA required).)

consider similar evidence from PNY (the "Section 2(d)" argument).   However, the Bankruptcy Court in fact considered the numbers submitted by both sides and ultimately accepted as true the Trustee's witness testimony about the error in the summary of cash flows that PNY relied on.   (*Id.* at 932-33.)   The Trustee's evidence showing only $41,923.57 payable to PNY that Polaroid had failed to remit was one way to rebut PNY's claims that it was owed any greater amount.   Therefore, the Bankruptcy Court's ultimate holding rested on a consideration of all evidence, rather than – as PNY argues – a refusal to consider some of PNY's evidence based on the Bankruptcy Court's interpretation of the Remand Order.[26]

### 2.   Whether the Mandate Rule Precluded the Trustee's Objection to the Invoices Claim

PNY asserts that, based on the mandate rule, "[b]ecause the Trustee did not appeal from the adverse ruling in the 2013 Claims Order, . . . either the Trustee was precluded in raising the Renewed Objection **or** PNY was entitled to limited discovery on the Unpaid Invoices Claim, consistent with the letter and spirit of [the Remand Order]."  (PNY Reply Br. at 7 (citing *Klein v. Arkoma Prod. Co.*, 73 F.3d 779, 784-85 (8th Cir. 1996)).)

The Court's review is limited to those issues raised below, since "[t]he function of the appellate court is not to make an initial decision but simply to review the action of the trial court."  *Booker v. Special Sch. Dist. No. 1*, 585 F.2d 347, 353 (8th Cir. 1978); *see Bethea v. Levi Strauss & Co.*, 916 F.2d 453, 456 (8th Cir. 1990).

---

[26] The Bankruptcy Court found that "[o]n all of the evidence of record, the Trustee's proof preponderates."  (App. at 933; *see id.* at 935 ("Even if . . . broader bases for an allowable claim were entertained, PNY did not produce any evidence to meet them anyway.").)

On remand, the Trustee made a belated objection to the Invoices Claim, first formally asserted in pre-trial briefing on September 11, 2015. (App. at 644.) While at hearing the Bankruptcy Court did question whether Polaroid's late objection was proper, PNY's counsel conceded that the Bankruptcy Court could consider the new objection. (*See* App. at 661.)[27] Furthermore, PNY never requested additional discovery in response to the new objection. PNY could have made a request to the Bankruptcy Court for additional discovery after the Trustee formally objected to the Invoices Claim in September, or PNY could have argued the same in its post-trial briefing before the Bankruptcy Court. Therefore, as the Court is "bound to simply review the action of the trial court," PNY is not entitled to the relief it seeks for failure to first raise the issue before the Bankruptcy Court. *Booker*, 585 F.2d at 353.

Additionally, the Remand Order hinged on the fact that PNY had presented a clear request for certain discovery prior to summary judgment after having never had the opportunity to conduct discovery before. *See In re Polaroid Corp.*, 527 B.R. at 346-50. Here, PNY argues that the Bankruptcy Court failed to adhere to the mandate rule even though the circumstances were distinguishable: PNY has now had a discovery opportunity, and it never formally requested additional discovery based on the Trustee's new objection. Therefore, the Bankruptcy Court's failure to provide PNY another discovery opportunity does not implicate the mandate rule as articulated in *Klein*. 73 F.3d at 784-85.

---

[27] Additionally, the Remand Order did vacate the 2013 Claims Order in full, and PNY has provided no legal authority supporting the argument that it was procedurally improper for the Bankruptcy Court to consider Polaroid's objection to the Invoices Claim.

### C.    DETERMINATION OF THE AMOUNT OF PNY'S CLAIM (ISSUES 2 & 4)

Issues 2 and 4 pose the same question worded in two different ways – whether the Bankruptcy Court clearly erred when it determined that the allowable amount of PNY's claim is $41,923.57.  (PNY Br. at 6-7.)  PNY asserts that it was clearly erroneous for the Bankruptcy Court to determine PNY's claim was for any amount less than $157,780.30.

First, PNY argues, citing *U.S. Gypsum Co.*, 333 U.S. 364, and *Anderson v. City of Bessemer City*, 470 U.S. 564 (1985), that Dolan's "uncorroborated" testimony regarding the error in the Monthly Reconciliations was "entitled to little evidentiary weight" because this testimony conflicts with contemporaneously-created documents – the Monthly Reconciliations themselves.  In *U.S. Gypsum Co.*, the United States alleged that the corporate defendants engaged in a conspiracy in which they acted in concert in entering into certain license agreements.  333 U.S. at 371-72.  To support this allegation, the United States introduced the "license agreements [and] more than 600 documentary exhibits consisting of letters and memoranda written by officers of the corporate [defendants], and examined 28 witnesses, most of whom were officers of the corporate defendants."  *Id.* at 372.  On cross-examination, the witnesses largely denied acting in concert and also denied "that they had agreed to do the things which in fact were done."  *Id.* at 395-96.  The Supreme Court held that the decision below, finding the corporate defendants did not act in concert, was clearly erroneous because "[w]here such testimony is in conflict with contemporaneous documents, we can give it little weight, particularly when the crucial issues involve mixed questions of law and fact."  *Id.* at 396.

Here – in contrast with the situation in *U.S. Gypsum Co.* – Dolan's testimony was not inconsistent with the existence or contents of the Monthly Reconciliations on which PNY relies. Dolan acknowledged that the Monthly Reconciliations were genuine, in the sense that they were in fact Polaroid's contemporaneously-created documents, and he presented a "coherent and facially plausible story" to explain the error in those documents. *Anderson*, 470 U.S. at 575. PNY did not counter with evidence showing that the numbers reflected on the Monthly Reconciliations were accurate, nor could it do so, because PNY failed to pursue the records from the Trustee and from Target[28] that could have rebutted Dolan's testimony. The Bankruptcy Court was not faced with a situation like that in *U.S. Gypsum Co.*, in which the trial court was presented with extensive documentary evidence, yet chose to credit the dishonest and directly conflicting live testimony. Instead, the Bankruptcy Court decided a purely factual matter – how much money Target had paid to Polaroid – after the parties presented two different numbers, and Dolan supported the lower number with a coherent and credible explanation. Thus, it was not clear error for the Bankruptcy Court to make the factual determination that Target had paid Polaroid $5,172,970, rather than $5,511,844, based on Dolan's testimony.

---

[28] At some point, PNY served Target with a subpoena seeking documentation of Target's PNY-related transactions with Polaroid. PNY's counsel reported that "Target would have produced to me if I had gone through all their hoops all their, I think, underlying data." (App. at 782.) PNY's counsel explained he decided not to follow up on the Target subpoena because it would have been "a complete universe of nonsense" to him without the corresponding data from Polaroid's records showing which Target transactions corresponded with which PNY transactions. (*Id.* at 782-83.) Again, the Court notes PNY never pursued a motion to compel production of the corresponding data from the Trustee.

Second, PNY argues that the Trustee was under a continuing obligation to produce documents pursuant to PNY's discovery request, including documents that might have supported Dolan's testimony about the accounting error.  PNY argues that it should have been provided with the underlying ledger books supporting Dolan's testimony, and when the Trustee failed to provide these source documents, the Bankruptcy Court clearly erred in crediting Dolan's testimony over the Monthly Reconciliations PNY provided.

However, PNY has not shown that it ever requested the ledger books in discovery. Because PNY withdrew its motion to compel, whether the Bankruptcy Court erred during the discovery process is not properly before the Court.  Additionally, PNY does not argue that Dolan's testimony was inadmissible based on the Federal Rules of Evidence – PNY merely argues that the Bankruptcy Court erred in weighing the evidence because of allegedly incomplete discovery.  As previously explained, under the deferential clear-error standard of review, the Court holds that the Bankruptcy Court did not clearly err in weighing the evidence the parties actually presented regarding the total payments from Target to Polaroid.

Third, PNY argues that the Bankruptcy Court's conclusion that the "Price Protection Chargeback" in the amount of $150,765.30 was "simply a book entry" is clearly erroneous.[29]  Although the Bankruptcy Court referred to the $150,765.30 as a "book entry," (App. at 927), its determination to allow PNY's claim up to only a fraction

---

[29]  At the evidentiary hearing, PNY submitted emails related to one of the itemized deductions in Claim 34 – a "Price Protection Chargeback" in the amount of $150,765.30.  PNY argues that Target had erroneously deducted this amount from payments to Polaroid related to PNY business, and then Target realized the deduction was an error and subsequently paid Polaroid this sum, which should have then been remitted to PNY.

of this amount was not based on a determination that Target never paid $150,765.30 to Polaroid, as PNY insinuates.  Instead, the Bankruptcy Court determined that even if Target did reverse this deduction and actually paid Polaroid $150,765.30, PNY failed to show that Polaroid never remitted those funds to PNY.  (*Id.* at 929-930 & n.10.)[30]  Thus, the Bankruptcy Court did not commit clear error in its fact-finding regarding the $150,765.30 deduction.[31]

Overall, the parties did not present the Court or the Bankruptcy Court with a clear picture of exactly what transactions did or did not occur between Target, Polaroid and PNY.  PNY attributes the ambiguity to Polaroid's failure to produce certain discovery. But the Court concurs with the Bankruptcy Court's conclusion that PNY had ample opportunity to procure evidence, (*id.* at 936), yet instead of pursuing discovery to support its claims, PNY withdrew its motion to compel before it had received the documents it now argues that the Trustee should have provided.  The Trustee presented evidence to the Bankruptcy Court rebutting the majority of Claim 34; PNY does not argue that this evidence was inadmissible under the Federal Rules of Evidence.  The Bankruptcy Court, as fact-finder, weighed the evidence and determined to allow a PNY claim of $41,923.57.

---

[30] The Trustee put on evidence showing Polaroid made two payments to PNY in September 2008 totaling $479,205.33, (App. at 778); the parties also agree that overall Polaroid paid PNY more than $5 million.  PNY did not prove that funds corresponding to the $150,765.30 deduction were not included in the multiple payments Polaroid made to PNY.

[31] PNY also argues that the Bankruptcy Court further erred in not allowing a claim for an additional $7,015 because PNY produced evidence from Target showing a rebate reduction for $7,015 was incorrectly matched with a PNY invoice and should have been applied to Polaroid's sales.  The Bankruptcy Court noted that "PNY did not link this small reversal to any of the categories of chargebacks itemized in its proof of claim," and also that PNY never proved that Polaroid never "pass[ed] payment on to PNY."  (App. at 928-29.)  The record supports the Bankruptcy Court's conclusion.

The Bankruptcy Court reasonably determined that Dolan's testimony was credible, and the Court is not left with a "definite and firm conviction that a mistake has been committed." *U.S. Gypsum Co.*, 333 U.S. at 395. Therefore, the Bankruptcy Court's factual determination of the amount of PNY's claim was not clearly erroneous.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the Court **AFFIRMS** the May 5, 2016, order of the Bankruptcy Court.

### LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  March 29, 2017
at Minneapolis, Minnesota.

_____ s/ John R. Tunheim _____
JOHN R. TUNHEIM
Chief Judge
United States District Court